## WILT ET AL. v. BUETER, TREASURER, ET AL.

[No. 22,745. Filed March 17, 1916. Rehearing denied February 15, 1917.]

1. MUNICIPAL CORPORATIONS.—*Public Improvements.—Power to Make Special Assessments.*—A city may have power to make an improvement, and yet have no power to make special assessments against property benefited to pay the expense of such improvement. p. 105.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.—Power to Make Special Assessments.*—The power of a city to assess the costs of improvements against abutting property is a part of the sovereign power of the State and is purely statutory, and, when granted, the extent of the power is limited to that which the statute expressly confers. p. 105.

3. MUNICIPAL CORPORATIONS.—*Public Improvements.—Power to Make Special Assessments.—Statutes.—Construction.*—Statutes granting municipal corporations the power to assess the cost of public improvements against abutting property are strictly construed in favor of property owners, and any doubt as to the existence of such power is resolved against the municipality. p. 106.

4. MUNICIPAL CORPORATIONS.—*Public Improvements.—Power to Make Special Assessments.—Statute.*—Under §8745 Burns 1914, Acts 1905 p. 236, 319, providing that, when the board of public works of any city shall order any street or alley to be supplied with lamp posts, it may by resolution order such lamp posts without publication or notice or the hearing of a remonstrance, and that the cost thereof shall be assessed against the owners of property benefited, a city is authorized to assess merely the cost of the lamp posts and no power is granted by such statute to make assessments to pay the expense of extending the distributing system of its electric lighting plant either by poles and wires or by conduits and cables, as the distributing system constitutes a part of the initial cost of the plant. p. 106.

5. MUNICIPAL CORPORATIONS.—*Public Improvements.—Acquiescence.—Validity of Assessment.—Estoppel.*—A property owner, who, knowing that a public improvement is being made which

benefits his property, stands by without objecting until the benefits have accrued, will not be permitted to question the validity of the assessment on account of any irregularity in the proceedings; and the same rule applies when the objection to the assessment is based upon a want of legal authority to order the improvement at the expense of abutting property, providing the proceeding was had under color of law. p. 107.

6. MUNICIPAL CORPORATIONS.—*Public Improvements.—Color of Law.*—"Color of law" does not mean actual law, but a mere semblance of legal right. p. 107.

7. MUNICIPAL CORPORATIONS.—*Public Improvements.—Assessments under an Unconstitutional Law.—Estoppel.*—A property owner may be estopped from questioning an assessment against his property upon the ground that the proceeding which resulted in the assessment was conducted under an unconstitutional law. p. 107.

8. MUNICIPAL CORPORATIONS.—*Public Improvements.—Proceedings under Unconstitutional Law.*—A law authorizing proceedings for a public improvement, even though unconstitutional or repealed by implication, affords color of law for acts done in pursuance thereto. p. 107.

9. MUNICIPAL CORPORATIONS.—*Public Improvements.—Erection of Lamp Posts.—Extent of Power.—Statute.*—Under §8745 Burns 1914, Acts 1905 p. 236, 319, authorizing a city board of public works to order lamp posts to be supplied for streets and alleys, no warrant is given nor is there color of law or apparent authority for the extension of the city's lighting system by means of conduits and cables connecting its plant with the lamp posts and assessing the expense against abutting property. p. 109.

10. MUNICIPAL CORPORATIONS.—*Contracts.—Limitation of Power. Notice.*—Every person contracting with a city is required to take notice of the limitations on the city's power, and he assumes the risk of the contract being void for want of such power. p. 109.

11. MUNICIPAL CORPORATIONS.—*Public Improvements.—Proceeding Based on Invalid Law.—Assessments.—Validity.*—If a proceeding for a public improvement is based upon a law which is unconstitutional, or is not founded upon some actual authority conferred by law, it is illegal from its inception even though there be color of law or apparent authority and an assessment for the improvement based upon such a proceeding is void. p. 110.

12. MUNICIPAL CORPORATIONS.—*Public Improvements.—Assessments.—Validity.—Estoppel to Question.*—The owner of property affected by a proceeding based upon color of law may

be estopped by his conduct from questioning the validity of an assessment against such property, even though void for the reason that there was no actual legal authority upon which such proceeding could rest, but such property owner cannot be estopped by his conduct from asserting that the proceeding was without authority of law where there is no color of law or appearance of authority for such proceeding. p. 110.

13. ESTOPPEL.—*Elements.—Good Faith.*—Where an estoppel is asserted as against the right of a property owner to deny the validity of an improvement assessment, it must appear as an essential element that the party claiming it acted in the honest belief that there was authority in law for the proceeding and that he had a right to rely upon it, but where the statute upon which the improvement proceeding is based is susceptible of but one construction, the parties claiming the estoppel could not have been misled in good faith and the property owner is not estopped from asserting that the proceeding was without warrant of law. p. 111.

14. MUNICIPAL CORPORATIONS.—*Public Improvements.—Collection of Assessments.—Action to Enjoin.—Estoppel.*—In an action to enjoin the collection of assessments against abutting property to pay the cost of erecting lamp posts and extending, by means of cables and conduits, the distributing system of the city's electric lighting plant, a conclusion of law that the property owners were estopped from questioning the validity of the assessment is not supported by the findings, where it is not found that they knew as the work progressed that it was the intention of the city to make an assessment against their property to pay the entire cost of the improvement, since it cannot be assumed that the property owners had knowledge that it was the city's purpose to make assessments to pay the expense of installing the cables and conduits for the reason that the municipality had no power or authority to impose an assessment for that purpose. p. 112.

15. MUNICIPAL CORPORATIONS.—*Public Improvements.—Assessments Invalid in Part.—Reassessment.*—Where a city's assessment against abutting property to pay the expense of erecting street lamp posts was invalid in that it included the cost of constructing conduits and cables to connect such posts with the city lighting plant, a reassessment covering the expense of furnishing the lamp posts could be made. p. 113.

16. MUNICIPAL CORPORATIONS.—*Public Improvements.—Special Assessments.—Partly Valid.—Enjoining Collection.—Tender of Amount Due.*—While it is generally true that the collection of excessive taxes will not be enjoined when the amount rightfully due has not been paid or tendered, yet this rule does not

apply where the entire assessment is void, as distinguished from one that is merely excessive, or where the amount of the legal taxes cannot be readily determined or easily separated from the illegal taxes; hence, where the entire cost of operating street lamp posts and connecting them with the city's lighting plant by means of conduits and cables was assessed against abutting property, property owners were not required to tender the cost of the posts, which could be properly assessed, before bringing an action to enjoin the assessment covering the entire cost of the improvement, as the property owners were not required to ascertain by measurements and computation the amount that could have been legally assessed against their property for the lamp posts in order to enable them to make a tender. pp. 113, 114, 115.

17. TAXATION.—Assessment Partly Illegal.—Injunction.—Tender of Amount Due.—Where an injunction is sought against a legal assessment of taxes which has been extended to include certain particulars which are illegal and in excess and there is no data from which the amount of the tax equitably chargeable may be ascertained, the taxpayer is not required to first pay or tender the amount legally due as a condition precedent to the granting of injunctive relief. p. 115.

18. MUNICIPAL CORPORATIONS.—Public Improvements.—Special Assessments.—Enjoining Collection.—Statute.—Section 8710 Burns 1914, Acts 1909 p. 412, relating to street improvements and providing that the validity of any contract for a public improvement shall not be subsequently questioned by any person except in a suit to enjoin its performance brought within ten days from the execution of such contract or prior to the actual commencement of the work thereunder, applies where the invalidity of the contract results from any irregularity or defect in the proceedings leading up to the letting thereof, but the statute cannot be successfully invoked in a suit brought to restrain the collection of a special assessment and based upon the ground that the municipality was wholly without statutory authority or color of law under which to proceed in ordering and making the improvement and paying for it by special assessment, as the proceeding in such a case is void ab initio. p. 117.

From Allen Circuit Court; John W. Eggeman, Judge.

Action by Franklin P. Wilt and others against J. Herman Bueter, treasurer of the county of Allen, and others. From a judgment for defendants, the plaintiffs appeal. Reversed.

*Creighton H. Williams,* for appellants.

*Guy Colerick, Taylor & Hulse* and *Barrett, Morris & Hoffman,* for appellees.

LAIRY, J.—This action was brought by appellants as owners of certain described real estate on Calhoun street in the city of Fort Wayne, Indiana, against J. Herman Bueter as treasurer of Allen county and *ex officio* treasurer of the city of Fort Wayne, the city of Fort Wayne, and other appellees, who as contractors with the city had an interest in the assessments which were assailed by this proceeding. The purpose of the action was to have the assessments against the real estate of appellants declared void and the collection of such assessments enjoined. There was a trial by court, which upon the request of all parties found the facts specially and pronounced its conclusions of law thereon in favor of appellees, and judgment was entered accordingly.

The proceeding which resulted in the assessments was instituted and carried forward by the officers of the city under the authority of §8745 Burns 1914, Acts 1905 p. 236, 319, which reads as follows: "Whenever the board of public works of any city shall order any street, alley or public place to be supplied with lamp posts, it may by resolution order such lamp posts without publication or notice or the hearing of remonstrances. Contracts for such lamp posts may be let as other contracts, and the cost thereof assessed against the owners of the property benefited, as the cost of street sprinkling; and the same shall be collected and the department of finance and the treasurer shall perform the same duties, and the contractor shall have the same rights as in the case of street sprinkling assessments."

On March 3, 1913, the board of public works of the

city of Fort Wayne passed a declaratory resolution for the placing of lamp posts to be supplied and equipped with electric lamps for lighting purposes on both sides of Calhoun street, from the south line of Grand street to the north line of Creighton avenue, according to plans and specifications on file. No plans and specifications were filed with the board of public works at the time this resolution was passed and none were adopted until August 13, 1913. In addition to the provision for the erection of lamp posts equipped for electric lighting as stated in the declaratory resolutions, the plans and specification adopted on the 13th day of August included provisions for two underground conduits near the curbing on each side of the street and extending the entire length of that portion of the street to be improved, and also included provisions for furnishing and installing electric cables throughout this system of conduits together with electric cable connections from the conduits to each of the lamp posts. These plans and specifications did not provide for lamps or globes but specifications for lamps and globes were furnished and adopted some time in November.

Pursuant to notice the contracts were let, the contract for the lamp posts being awarded to the Bass Foundry and Machine Company at the price of $25.90 each, and the contract for the construction work being awarded to W. M. Sheehan and Company for $8,014. Both of these contracts were finally awarded on September 15, 1913, and the publication of the notice occurred after the plans and specifications were on file. After the specifications for the luminous arc globes were placed on file the board of public works gave notice, and pursuant thereto awarded the contract to the General Electric Company at the price of $36 each. The board of public works did not fix a time for a hearing on the question as to whether the aggregate benefits to the property

affected would equal the aggregate cost of the contemplated improvement; it caused no notice of such a hearing to be published, and did not require the city engineer to file an estimate of the maximum cost. No such hearing was had and the question was not determined before the contract was let as provided by §8710 Burns 1914, *supra*. The contracts were completed and the work accepted and the whole cost of the improvement was assessed against the abutting property owners, including the amount paid engineers for preparing plans and superintending the work. The total length of the improvement from the south line of Grand street to the north line of Creighton avenue is 4,799.45 feet, of which 600 feet consists of intersections of streets and alleys. The plans and specifications required that the conduits carrying the cables and wires should be constructed across these intersecting streets and alleys and the posts were so located as to light the street and alley intersections as well as the street in front of the abutting property. In order to connect the electric power line of the city with this lighting system as required by the plans and specifications, it was necessary to bring a supply cable from Montgomery street to Murray street. This work was included in the contract and the cost thereof was assessed against the property abutting on the part of the street improved. No assessment was placed against the city on account of the intersections of the streets and alleys and no deduction on that account was made from the cost of the improvement as assessed against the abutting property.

Appellees filed certain answers to which a reply in general denial was filed. Under the issues thus formed and from the evidence introduced thereunder the court found certain facts upon which appellees rely as constituting an estoppel. The trial court upon the facts

found concluded as a matter of law that appellants were estopped from denying the validity of assessments.

Appellants assert that the statute quoted in a former part of this opinion conferred upon the authorities of the municipal corporation power to cause lamp posts to be erected and to assess the costs against the abutting property, but they insist that the power and authority there granted extends only to the cost of the lamp posts and the expense of erecting them. Appellants take the position that this statute does not afford to such municipality or its officers either legal or colorable authority to assess against abutting property the cost of extending the lighting system of the city by means of conduits and cables along that part of the street where such poles are erected, and of connecting such system with the poles and furnishing the lamps and globes, and attaching them to the posts.

It is well settled that a city may have power to make an improvement and yet have no power to make special assessments against property benefited to pay

1. the expenses of such improvement. The power to assess the costs of improvements against abutting property is purely statutory; it does not

2. exist in the absence of a statute and, when granted, the extent of the power is limited to that which the statute expressly confers. *Indiana Union Traction Co.* v. *Gough* (1913), 54 Ind. App. 438, 102 N. E. 453; *Darby* v. *Vinnedge* (1913), 53 Ind. App. 525, 100 N. E. 862; *Klein* v. *Nugent Gravel Co.* (1903), 162 Ind. 509, 70 N. E. 801. It has been held that the power thus granted is part of the sovereign power of the state. It will not be inferred from a statute but must be expressly granted. *City of Crawfordsville* v. *Braden* (1892), 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. 214; *Adams* v. *City of Shelbyville* (1899), 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. 484;

*Klein* v. *Nugent Gravel Co. supra.* Statutes on
3.  this subject are strictly construed in favor of the
abutting property owner, and in case of doubt as
to the existence of such power, the doubt is resolved
against the municipality. *Marion Trust Co.* v. *City of
Indianapolis* (1905), 37 Ind. App. 672, 75 N. E. 834;
*Adams* v. *City of Shelbyville, supra.*

Section 8745, *supra,* confers express authority on the
board of public works of a city to cause any street, alley
or public place to be supplied with lamp posts
4.  and to assess the cost thereof against the abut-
ting property. The language of this statute is
plain and explicit, not ambiguous or uncertain, and it is
not necessary to resort to rules of construction to deter-
mine its meaning. It is a matter of general knowledge
that cities of this State are lighted either by municipal
plants owned and operated by them or by a public serv-
ice corporation operated under a franchise or indetermi-
nate permit. In either case the electricity is generated
at a power house and the current is carried to the dif-
ferent parts of the city on distributing wires carried
on poles or conducted in conduits. The distributing
system constitutes a part of the plant the initial cost
of which is borne by the public utility whether owned
by a public service corporation or by a municipality.
To assess the cost of the material and labor in making
extensions of the distributing system of an electric
lighting plant either by poles and wires or by conduits
and cables would be to compel property owners abut-
ting on the streets along which such extensions were
made to pay a part of the initial cost of the plant. No
authority to assess against abutting property the costs
of constructing and installing any part of the distribu-
ting system of an electric plant can be derived from this
statute without resorting to inferences and implica-
tions.

It is apparent that the board of public works exceeded the authority conferred by statute, and that it had no actual authority to do more at the expense of the abutting property owners than to supply the lamp posts. The difficulty has been to determine whether or not the statute under consideration affords color of authority for the proceeding which resulted in the assessment. It is well settled in this State that a property owner, who, knowing that a public improvement is being made which benefits his property, stands by without objecting until the benefits have accrued, will not be permitted to question the validity of the assessment on account of any irregularity in the proceedings; and the same rule applies when the objection to the assessment is based upon a want of legal authority to order the improvement at the expense of abutting property, providing the proceeding was had under color of law. *Martindale* v. *Town of Rochester* (1908), 171 Ind. 250, 86 N. E. 321, and cases cited. "Color of law does not mean actual law. "Color" as a modifier, in legal parlance, means "appearance," as distinguished from "reality". Color of law means "mere semblance of legal right." Kinney, Law Dictionary and Glossary; *State, ex rel.* v. *City of Des Moines* (1896), 96 Ia. 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. 381; *Topeka* v. *Dwyer* (1904), 70 Kan. 244, 78 Pac. 417, 3 Ann. Cas. 239. A property owner may be estopped from questioning an assessment against his property upon the ground that the proceeding which resulted in the assessment was conducted under an unconstitutional law. *Vickery* v. *Board* (1893), 134 Ind. 554, 32 N. E. 880. A law authorizing the proceedings, even though unconstitutional, affords color of law and so also does a law which has been repealed by implication. *Cluggish* v. *Koons* (1896), 15 Ind. App. 599, 43 N. E. 158.

The statute under which this proceeding was conducted is conceded to be valid. In this case it is not a question as to whether there is a colorable law purporting to give authority for the proceeding, but whether the statute, which is admitted to be valid, confers colorable authority on the city to make the improvement undertaken at the expense of the abutting property. Is the statute so worded as to give an appearance or semblance of such authority? Under the doctrine adopted in this State, this statute might be held to confer authority for the work undertaken if it were uncertain in its meaning and if it were susceptible of a construction which would confer the authority claimed. Such a meaning cannot be drawn from the statute in question without resorting to inferences or intendments which is not permitted. *Klein* v. *Nugent Gravel Co. supra; Adams* v. *City of Shelbyville, supra; Marion Trust Co.* v. *City of Indianapolis, supra; Indiana Union Traction Co.* v. *Gough, supra.*

In the case of the *City of Fort Wayne* v. *Shoaff* (1886), 106 Ind. 66, 5 N. E. 403, it was shown that a space had been dedicated to the city for a market place and that the city, proceeding under the statute authorizing cities to improve streets and alleys, had caused this space to be paved and had assessed the costs against the abutting property. It was held that the statute conferred no authority to make the improvement at the expense of the abutting property owner and that the proceeding was absolutely void. In cases where the statute provides that the assessment shall be made against the property which abuts on the improvement, it has been held that an assessment made against property not abutting on the improvement may be enjoined on the ground that there was no legal authority to make the assessment and that the same is absolutely void. *City*

*of Terre Haute* v. *Mack* (1894), 139 Ind. 99, 38 N. E. 468.

So it has been held that an assessment for the construction of a sewer could not be made against the franchise right of a street car company located within the limits of the street, when the statute provided that the costs should be assessed against the lots and parcels of land within the territory benefited, for the reason that the statute conferred power to assess lots and parcels of land only. *Indiana Union Traction Co.* v. *Gough, supra.*

In view of the principles announced and the tests applied in the foregoing authorities, the court is of the opinion that no warrant or authority of law existed for a proceeding by the city for the construction of an improvement of the scope and character of the one here shown, to be paid for by assessments against abutting property; and it is the further opinion of the court that no color of law or apparent authority existed by which such proceeding can be justified or sustained. The statute expressly authorized proceedings by which lamp posts might be supplied and the costs assessed to abutting property, but the language used is so plain as to preclude any construction by which its meaning could be so extended or enlarged as to give even colorable authority for a proceeding of the kind here under consideration. A proceeding of this kind which does not rest upon some authority conferred by law is absolutely void. Every person contracting with a city is required to take notice of the limitations on the city's power, and he assumes the danger of the contract's being void for want of such power.

On principle it would seem that any proceeding of this character, not based upon a valid law, would be

without legal force or effect and that any assessment based thereon would be absolutely void.

"Color of law" or "color of authority" cannot render a proceeding valid if there is no actual or valid law upon which it can rest. It would seem that "color of law" would have no effect in determining the legality or validity of a proceeding. If a proceeding is not founded upon some actual authority conferred by law, it is illegal from its inception even though there be color of law or apparent authority. A proceeding based upon a law which is unconstitutional is illegal from its inception for the reason that it does not rest upon any authority conferred by law. An assessment based upon such a proceeding must be void.

It has been frequently held that the owner of property affected by a proceeding based upon color of law may be estopped by his conduct from questioning the validity of an assessment against such property, even though it is void for the reason that there was no actual legal authority upon which such proceeding could rest; but it has never been held by the courts of this state that such a property owner can be estopped by his conduct from asserting that the proceeding was without authority of law, even where there is no color of law or appearance of authority for the proceeding. If actual authority conferred by law is essential to the validity of a proceeding, and, if an assessment based upon a proceeding which is illegal from its inception is void, and if the results consequent upon such a proceeding are not affected by the presence or absence of color of law, then it would seem that no good reason could exist which would exclude the application of the doctrine of estoppel in cases where there is not even color of law to sustain the proceedings.

It may be that a semblance of law or an appearance of authority for the proceeding may be considered as

bearing upon the question of the good faith of the party claiming the estoppel. There can be no doubt that where an estoppel is asserted in a proceeding of this kind, it must appear as an essential element that the party claiming it acted in the honest belief that there was authority in law for the proceeding and that he had a right to rely upon it. A law which is unconstitutional or one which has been repealed by implication might well mislead persons acting under its apparent authority. They might believe in good faith that an unconstitutional law was valid, or that a law which had been impliedly repealed was still in force, and they might be misled thereby and induced to act to their disadvantage. Under such conditions it would be a question of fact whether or not the person claiming the estoppel did act honestly in the belief that the apparent law conferred actual authority. On the other hand, if there is no law which gives any apparent authority for the proceeding, there can be no room for any one to be misled or deceived thereby and no one would be permitted to claim that he acted in good faith. The court would say as a matter of law that no apparent authority existed and no question of fact as to the good faith of the party claiming the estoppel could arise. The same rule must apply in a case where the party claiming the estoppel relies on a misconstruction of a valid statute. If such a statute is susceptible of more than one meaning, those acting under it might honestly place a misconstruction upon it and be misled in good faith. Whether a statute is capable of more than one meaning is a question of law which the court must first decide. If the result of this decision is to determine that the law can have but one meaning, then no question of fact as to the good or bad faith of the party claiming the estoppel can arise; but if the result of the decision is to determine that the law is suscep-

tible of more than one meaning, then a question of fact arises as to whether the party claiming the estoppel honestly misconstrued the law and acted in good faith as to the authority which it conferred. In this case the statute upon which the proceeding is based is suscep-. tible of but one meaning and the court should have so held. That being true, no question of fact as to the good faith of the contractors was presented and the findings of the court on that subject are without force or effect. As the parties claiming the estoppel could not have been misled in good faith, they are in no position to assert that a property owner is estopped from asserting that the proceeding was without warrant or authority of law.

The findings are insufficient to support the conclusions of law in another respect. It is not found as a fact that appellants knew as the work progressed that it was the purpose of the city to make an assessment against their property for the purpose of paying the cost of the improvement. "Where the record of the proceedings shows color of jurisdiction, the property owner, until the contrary appears, will be presumed to have had notice of the progress of an improvement for which his property was being benefited." *Ross* v. *Stackhouse* (1888), 114 Ind. 200, 206, 16 N. E. 501. When, however, the record does not show jurisdiction to order the improvement or some part of it, a different rule must apply. In such a case it cannot be assumed that the property owner had knowledge that it was the purpose of the city to make assessments against his property to pay the costs of an improvement which the city had no power to make and pay for in that manner. In this case, it may be assumed that appellants knew that the cost of supplying the lamp posts would be assessed against their property; but they were not bound to know that the cost of the other part

of the improvement was to be assessed against their property, for the reason that the city had no power or authority under the law to impose an assessment for such a purpose.

There can be no doubt that the property abutting on the part of the street improved is liable to an as-

15. sessment for the costs of furnishing the lamp posts, and that a reassessment can be made for that purpose.

Appellees further claim that no relief can be granted here for the reason that it does not appear that appellants have paid or tendered the amount of the

16. assessment made for defraying the cost of the posts and their installation alone, the claim being based upon the theory that before an action to set aside the assessment or to enjoin the collection thereof can be maintained, the portion of the tax which is valid must be paid or a tender thereof made. In accordance with the equitable maxim that he who seeks equity must do equity, it is generally held that the collection of excessive taxes will not be enjoined when the amount rightfully due has not been paid or tendered. *Ricketts* v. *Spraker* (1881), 77 Ind. 371; *Loesnitz* v. *Seelinger* (1891), 127 Ind. 422, 25 N. E. 1037, 26 N. E. 887; *Studabaker* v. *Studabaker* (1898), 152 Ind. 89, 51 N. E. 933.

The general rule, however, is subject to the exceptions that such payment or tender is not necessary in cases where the entire assessment is void, as distinguished from one that is merely excessive, or where the amount of the taxes which are legal cannot be readily determined or easily separated from the taxes which are illegal. *Norwood* v. *Baker* (1898), 172 U. S. 269, 291, 19 Sup. Ct. 187, 43 L. Ed. 443; *Jones* v. *Holzapfel* (1902), 11 Okl. 405, 68 Pac. 511; 1 High, Injunctions

(4th ed.) §498. In the case at bar the entire cost of the improvement was apportioned and assessed against the several tracts of abutting property. Even though it might have been possible for appellants to have ascertained by measurements and computation the amount that could have been legally assessed against their property to pay the cost of furnishing the lamp posts, still they were not required to make such measurements and computations in order to enable them to make a tender. The assessment cannot be sustained in whole or in part. Except as to the costs of supplying the lamp posts the entire assessment is void, and, as the part that is valid cannot be separated readily from the part which is void, the ends of justice will be best served by setting aside the entire assessment and permitting a new assessment to be made by the proper officers. *Norwood* v. *Baker, supra.*

The judgment is accordingly reversed, with instructions to the trial court to restate its conclusions of law in accordance with this opinion.

### On Petition for Rehearing.

LAIRY, C. J.—Appellees' counsel on petition for rehearing challenge the holding of the court in regard to a tender of the amount legally due from appellants for the cost of supplying the lamp posts, it being further insisted by counsel that a tender of the amount thus due was a condition precedent to the granting of injunctive relief in this case.

"No principle of the law of injunction is more firmly established than that requiring a taxpayer who seeks the aid of an injunction against the enforcement

16. or collection of a tax to first pay or tender the amount which is conceded to be legally and properly due." 1 High, Injunctions (4th ed.) §497. This familiar rule has been frequently recognized in this

State. *City of Evansville* v. *Pfisterer* (1870), 34 Ind. 36, 7 Am. Rep. 214; *Ricketts* v. *Spraker* (1881), 77 Ind. 371; *City of Elkhart* v. *Wickwire* (1889), 121 Ind. 331, 22 N. E. 342; *City of Logansport* v. *McConnell* (1890), 121 Ind. 416, 23 N. E. 264; *Loesnitz* v. *Seelinger* (1891), 127 Ind. 422, 25 N. E. 1037, 26 N. E. 887; *Studabaker* v. *Studabaker* (1898), 152 Ind. 89, 51 N. E. 933. As stated in the original opinion, however, the general rule requiring the payment or tender of the amount actually due before equitable relief against the illegal portion of the assessment can be granted is not applicable to cases where the entire tax fails on account of an assessment wholly illegal, as it is impossible for the court to determine an amount due, there being no legal tax assessed. *Howell* v. *Tacoma* (1892), 3 Wash. 711, 29 Pac. 447, 28 Am. St. 83; *Yocum, Auditor,* v. *First Nat. Bank* (1896), 144 Ind. 272, 43 N. E. 231; *Norwood* v. *Baker* (1898), 172 U. S. 269, 291, 19 Sup. Ct. 187, 43 L. Ed. 443; *Jones* v. *Holzapfel* (1902), 11 Okl. 405, 68 Pac. 511; *Dumars* v. *City of Denver* (1901), 16 Colo. App. 375, 65 Pac. 580.

The rule under discussion likewise has no application where an injunction is sought against a legal assessment which has been extended to include certain particulars which are illegal and in excess and where there is no data from which the amount of the tax equitably chargeable may be ascertained. *Hughson* v. *Crane* (1896), 115 Cal. 404, 47 Pac. 120; 2 Joyce, Injunctions §1208.

Counsel virtually concede the correctness of the principles announced in these cases, but insist: First, that data appears in this case from which by a simple computation appellants could easily have ascertained the amount of the pro rata share of the expense equitably due from them; and, secondly, that even though such data were not present, the law required

that appellants should make such measurements as were needed to supply them with the necessary facts.

The complaint states the total front footage of property abutting on the improvement and gives the front footage of the property owned by appellants. The cost of supplying the lamp posts is given with the cost of advertising. The amount of street and alley intersections, however, is not given and without such data it would be impossible to determine appellants' pro rata share of the expense in question for the reason that there is no way of knowing how much of such expense is to be borne by the city. From all that appears it would have been necessary, in order that appellants know the amount equitably due, that they make an exact measurement of these street and alley intersections. The court has been cited to no authority announcing a rule which would require such action on the part of appellants, and it has been unable to find any. It is generally stated that a tender will be required in a proper case where "the amount of the valid tax can be readily ascertained." 1 High, Injunctions (4th ed.) §497. In *Mills* v. *Charleton* (1872), 29 Wis. 400, 9 Am. Rep. 578, it was required where the amount of an excess was "plainly ascertainable." The opinion in the case of *Ricketts* v. *Spraker, supra,* states the rule using the expression "the amount conceded to be owing." The expression "if such excess can be determined by mere computation," is used in this connection in *Wells* v. *Western Paving, etc., Co.* (1897), 96 Wis. 116, 70 N. W. 1071, and in *National Bank* v. *Kimball* (1880), 103 U. S. 732, 26 L. Ed. 469, the amount of tender spoken of is "so much * * * as it can be plainly seen he ought to pay." In the original opinion some figures were used in describing the improvement in question, but these were taken from the special finding. There is in the record nothing to show that the information

necessary was in the possession of appellants before or at the time the suit was commenced.

Appellees, in their petition for rehearing, urge also that certain provisions of §8710 Burns 1914, *supra,* precluded appellants' suit for injunction. Section 18. 8745 Burns 1914, *supra,* in reference to the construction of lamp posts, provides that the procedure with respect to the letting of contracts and the collection of assessments shall conform to §8742, *supra,* on the subject of sprinkling and cleaning streets. The latter section provides that, whenever an order is made for the sprinkling, oiling or cleaning of any street, alley or public place by the designated authorities of a city or town, such authorities shall cause specifications to be made and filed and shall publish a resolution ordering such work to be done, modify, confirm or rescind the original resolution, advertise for bids and let contracts, all as more specifically provided in the act in relation to the improvement of streets. Section 8710 Burns 1914, *supra,* on the subject of street improvements provides that in the event of any contract for any public improvement the validity of such contract shall not be subsequently questioned by any person except in a suit to enjoin the performance of such contract, instituted by such person within ten days from the execution of said contract or prior to the actual commencement of the work thereunder. It is claimed that this proviso of §8710, *supra,* applied to the proceeding which resulted in the assessment sought to be enjoined in this suit, and that, as the performance of the contract was not enjoined within the time stated in the statute, the validity of the contract cannot subsequently be questioned. In cases where the invalidity of the contract results from any irregularity or defect in the proceedings leading up to the letting of the contract the statute applies. The rule cannot be success-

fully invoked, however, in a suit brought to restrain the collection of a special assessment and based upon the ground that the municipality was wholly without statutory authority or color of law under which to proceed in ordering and making the improvement and paying for the same by special assessments. In such a case the proceeding is void *ab initio* and the statute has no application.

The cases cited by appellant to sustain their contention are cases in which an injunction was denied upon the ground that an absence of authority on the part of those sought to be enjoined had not been shown. *Robinson* v. *City of Valparaiso* (1894), 136 Ind. 616, 36 N. E. 644; *Alley* v. *City of Lebanon* (1896), 146 Ind. 126, 44 N. E. 1003; *Everett* v. *Deal* (1897), 148 Ind. 90, 47 N. E. 219; *Gardiner* v. *City of Bluffton* (1909), 173 Ind. 454, 89 N. E. 853, 90 N. E. 898, Ann. Cas. 1912A 713. This opinion is not in conflict with these authorities.

The petition for rehearing is overruled.

NOTE.—Reported in 111 N. E. 926, 115 N. E. 49. Illegal tax: (a) right of an individual to enjoin collection, 3 Ann. Cas. 1014, 6. Am. Dec. 198; (b) necessity of tender or payment of tax due to restrain collection, 22 L. R. A. 703. Injunction to prevent collection of tax on excessive assessment, 16 L. R. A. (N. S.) 807; L. R. A. 1916 A 972. See under (16, 17) 37 Cyc 1271, 1272.